UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LEKESHA ROBINSON,

    Plaintiff,

v.                                                            Case No. 15-C-263

MILWAUKEE SECURE DETENTION FACILITY, et al.,

    Defendants.

**ORDER**

    The Plaintiff filed a *pro se* complaint under 42 U.S.C. § 1983, alleging that her civil rights were violated after jail staff failed properly to treat an outbreak of bedbugs. The Defendants have moved for summary judgment. For the reasons that follow, their motion will be granted.

    The Plaintiff filed two grievances on October 26, 2014, while she was incarcerated at the Milwaukee Secure Detention Facility, or MSDF. The first complaint, which alleged an incident date of October 17, 2014, stated that the Plaintiff had been itching and had treated her skin with hydrocortisone cream, which returned her skin to normal. (ECF No. 23-1.) The complaint further stated that "it was announced that bed bugs" were in the building, a reference to the fact that on the date of her complaint she had apparently overheard other inmates in a cell below hers allege that there were bedbugs. That cell was sanitized, although jail staff could not confirm that bedbugs (rather than some other kind of bug) had ever been present. In any event, Plaintiff's complaint connected the "bedbug" incident with her own rash and theorized that bedbugs must have been the cause of her itch. The complaint examiner wrote as follows:

    Inmate complained there were bed bugs on her unit and she didn't feel they were

> properly taken care of. According to staff reports Sgt. Williams was working on 6N when she reported that there bugs (possible lice or scabies) found in room 6B05. HSU was unsure of what they were. The inmates were quelled and given clean clothing, bedding removed from the rooms, beds were wiped down along with cleaning up of the cell. According to Capt Renteria, 6B05 was the only cell affected. Inmates were secure in rooms until the area was properly cleaned. There was no evidence there were bed bugs on the unit. No problems were found on the unit after this incident and the cleaning of this cell.

(DPFOF ¶ 37.)

The second complaint, dated the same date, described the "bedbug" incident in the cell below hers. (ECF No. 23-2.) The Plaintiff offered her opinion that the inmates' mattresses should have been replaced, and the staff should have instructed other inmates to disinfect their cells. (*Id.*) She apparently obtained these opinions from "fox six news." (*Id.*) She concluded the complaint by suggesting that "this is a serious act" and that she would be contacting her attorney as well as the Fox 6 television station. (*Id.*) The complaint did not allege any injury or harm to her own body.

The Plaintiff was transferred to Taycheedah Correctional some six weeks later, but she did not drop the matter. In an inmate appeal, she argued that there had been bed bugs in her MSDF unit (not some other kind of bug) and that "per fox six news to remove/kill bed bugs its mandatory that you throw away the mattresses. Lice killing shampoo does not kill bed bugz. The procedure was against DOC code, and the situation wasn't handle properly." (ECF No. 23-2 at 5.) (The Defendants say that the mattresses were brand new and were covered in plastic, making it easier to disinfect them.)

In essence, the Plaintiff's complaint is that jail staff did not properly treat a bed bug incident in the jail. Instead of following the procedures the Plaintiff believes were appropriate, the jail staff sanitized only one cell, did not replace the mattresses, and only offered lice shampoo— rather than

2

some bedbug-specific treatment—to inmates who wanted it. There are several problems with the Plaintiff's complaint. First, the injury she alleges does not rise to the level of cruel and unusual punishment under the Eighth or Fourteenth Amendment. At worst, she alleges she had some bites that caused itching, which was relieved by hydrocortisone cream. Individuals outside of prison are bitten by various insects thousands or millions of times per day, often resulting in skin irritation. Even luxury hotels and apartments have bedbugs, cockroaches, and other pests. Absent any allegation that the itching and bites were severe or anything out of the ordinary, an itch from insect bites does not rise to the level of harm necessary to demonstrate unconstitutional conditions of confinement. *See Holden v. Knight,* No. 3:15-CV-432 JD, 2016 WL 696088, at *3 (N.D. Ind. Feb. 22, 2016) (collecting cases) ("it does not appear as though Holden's skin rash, which is allegedly itchy and has 'hot spots,' can be considered an objectively serious medical condition. Typically, without more, skin rashes are not.") (*Sledge v. Kooi,* 564 F.3d 105, 108 (2d Cir. 2009) (eczema is not a "serious medical need" on which to base a claim of deliberate medical indifference); *Tasby v. Cain,* 86 Fed. Appx. 745, 746 (5th Cir. 2004) (a prisoner's claim that he developed a rash from being placed in restraints does not establish serious harm); *Gonzalez-Reyna v. Ellis,* No. 1:09CV522, 2009 WL 2421482, *3 (E.D. Va. July 27, 2009) ("[I]t is doubtful that a skin rash, even one which causes pain and itching, is a sufficiently serious medical need to support an Eighth Amendment violation.").

A second problem is that by the time the jail staff learned of the supposed bedbug problem, on October 26, 2014, the Plaintiff's own injuries had already been healed by the cream she obtained. The complaints and appeal she filed are merely her own opinions about how jail staff should have handled the situation in order to prevent a future outbreak. As such, there is no evidence that any

3

of the Defendants were aware of any bedbug problem relating to the Plaintiff herself *prior* to the Plaintiff's itch developing. Even if there was some sort of bedbug problem in the cell below the Plaintiff's cell, government officials cannot be held liable for conditions about which they were not aware. The Plaintiff's generalized complaint about how the staff handled the bug problem does not state any claim of injury to her.

Accordingly, the motion for summary judgment is **GRANTED** and the case is **DISMISSED**. The motion to appoint counsel is denied, as the Plaintiff has demonstrated more than adequate ability to make the relevant facts known to the court. *Pruitt v. Mote,* 503 F.3d 647, 660 (7th Cir. 2007).

Dated this 29th day of June, 2016.

/s William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court